The parties entered into a Form 21 agreement on October 9, 1998, and the North Carolina Industrial Commission approved the agreement on December 22, 1998. After having bilateral carpal tunnel releases, plaintiff returned to work ostensibly for a trial period; however, the employer terminated plaintiff on May 5, 1999, alleging deficient job performance caused by her occupational disease to be misconduct.
Alberta McRea worked for Toastmaster, Inc. in an assembly line in their manufacturing plant. Ms. McRea completed the 9th grade by attending special education classes. Psychological testing revealed that Ms. McRea possessed an IQ of 59. Her scores on the Wide Range Achievement Test indicate that she functioned below the fourth grade level. Ms. McRea's work history consisted of working on assembly line or janitorial jobs in 1976.
Ms. McRea began working for Toastmasters in October of 1996. When she first began to work at Toastmasters, she performed the UPC job, a job that required her to p1ace labels on clocks as they came down on the conveyer belt. During her 6 month tenure on the UPC job, Ms. McRea never received a disciplinary write up. After her first 6 months on the job, Toastmaster assigned Ms. McRea to an assembly line where the face and dials of the clocks were assembled.
The dialing job required ornate and fine movement of the upper extremities and the employer set a production rate. In the spring of 1998, Ms. McRea presented to her line leader complaints of numbness in her hands while working. In addition, Ms. McRea experienced nocturnal numbness. Ultimately, Mark E. Brenner, M.D., an orthopaedic surgeon and hand specialist, performed carpal tunnel release on October 26, 1998, to Ms. McRea's right upper extremity. On November 30, 1998, Dr. Brenner preformed a carpal tunnel release on Ms. McRea's left upper extremity.
On January 14, 1999, Dr. Brenner released plaintiff to return to work. On April 13, 1999, Dr. Brenner wrote Mary Ellen Creech of Toastmaster and stated "the avoidance of dialing activities, since this in particular is expressed as a source of discomfort" is ordered on a permanent basis. Notwithstanding Dr. Brenner's note, Toastmasters returned plaintiff to the dialing job in direct violation of this restriction. As a result of her return to the dialing job, plaintiff continued to suffer from numbness and pain to her upper extremities.
On April 19, 1999, Toastmasters wrote plaintiff up for missing a UPC label. On April 27. 1999, Toastmasters wrote Ms. McRea up for missing a UPC label. On April 28, 1999, Toastmasters wrote Ms. McRea up for again missing a UPC label. On May 5, 1999, Toastmaster terminated Ms. McRea for missing a UPC label.
On May 10, 1999, Dr. Brenner wrote Amy E. Key of Corporate Claims Management, Inc. and stated Ms. McRae "does quite well when not performing activities requiring repetitive pushing, pulling, and gripping. However, upon performing repetitive motion types of activities, she tends to experience recurrent pain." He also wrote, "long term restrictions would be appropriate. These would include avoidance of repetitious pushing, pulling, gripping, pinching and fingering. If [emphasis added] tolerance improves, then work-related activity could be increased, I project permanent and partial impairment to measure 4% of her left hand and 4% of her right hand."
It is apparent that Ms. McRae's inability to keep up with the UPC production job was caused by her compensable occupational disease. She was under doctor's orders to avoid "repetitious pushing, pulling, gripping, pinching and fingering", the very things she had to do to place the UPC labels. Thus her dismissal was directly tied to her compensable injury and does not meet the Seagraves test.
This 27th day of March 2002.
 S/_____________________________ THOMAS J. BOLCH COMMISSIONER